IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 12–cv–01381–WYD–KMT

HEATHER CARTER,

      Plaintiff,

v.

DAVID C. LOUCKS, M.D.,
RICHARD M. LOTSPEICH, P.A.-C., and
PEAK ORTHOPEDICS AND SPINE, P.L.L.C,

      Defendants.

---

## ORDER

---

This matter is before the court on "Defendants Richard M. Lotspeich, PA-C's and Peak Orthopedics and Spine, PLLC's Supplement to its Motion to Conduct *Ex Parte* Meetings with Certain Health Care Providers" [Doc. No. 32, filed December 14, 2012]. Plaintiff filed her response on January 11, 2013 [Doc. No. 39], and Defendants filed their Reply on January 25, 2012 [Doc. No. 40]. The court issued its Order granting Defendants Richard M. Lotspeich, PA-C's and Peak Orthopedics and Spine, PLLC's Motion to Conduct *Ex Parte* Meetings with Certain Health Care Providers [Doc. No. 27] allowing for *ex parte* interviews by Defendants with a number of medical personnel found to be pursuing a unified course of treatment in consultation with the named Defendants on January 25, 2013. [Doc. No. 41.]

In this supplemental motion, Defendants seek the same unfettered access to a number of Plaintiff's treating medical providers who were admittedly not in consultation with the medical providers named as defendants, including: *Naval Medical Center Portsmouth*: *(Adult Reconstruction/Total Joint Replacement, Pain Management)*, treating for pain management services from January 2011 through May 2011; *Langley Physical Therapy*, treating with physical therapy beginning in May 2010; *Langley AFB Hospital*, Dr. James Tinsley, providing orthopedic care beginning in October 2010,and continuing through the present and Dr. Powell who provided orthopedic follow-up from May 2010 through November 2010; *Langley AFB Aquatic Therapy*, providing aquatic therapy instruction beginning in January 2011 and continuing through the present; *Langley AFB Mental Health* during an unspecified period of time; *University of Colorado Hospital Anschutz Medical Pavillion*, providing aquatic therapy beginning in July 2010 and continuing through October 2010; and, *Buckley ADB (sic) Hospital – Mental Health Clinic and PCM*, providing treatment from May 2010 through October 2010.

Colorado's physician/patient privilege[1] is set forth at Colo. Rev. Stat. § 13-90-107(1)(d),

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

> (d) A physician, surgeon, or registered professional nurse duly authorized to practice his or her profession pursuant to the laws of this state or any other state shall not be examined without the consent of his or her patient as to any information acquired in attending the patient that was necessary to enable him or her to prescribe or act for the patient . . . .

---

[1] In this diversity action, the parties do not dispute that Colorado provides the rule of law regarding application of privileges.

2

*Id.* Following the description of the privilege are several exceptions to the privilege, one of which occurs when a medical professional is working in consultation with other providers, stating

> (II) A physician, surgeon, or registered professional nurse who was in consultation with a physician, surgeon, or registered professional nurse being sued as provided in subparagraph (I) of this paragraph (d) on the case out of which said suit arises;

Colo. Rev. Stat. § 13-90-107(1)(d)(II).

Where the patient has injected her physical or mental condition into the case as a basis of a claim or an affirmative defense, the patient has impliedly waived any claim of privilege respecting that medical condition. *See Samms v. District Court, Fourth Judicial Dist. of State of Colo.,* 908 P.2d 520, 524 (Colo. 1995); *Clark v. District Court,* 668 P.2d 3, 10 (Colo. 1983) (plaintiff "impliedly waives any claim of confidentiality respecting that same condition"). The extent of the waiver is necessarily established by the facts at issue and is "limited to the cause and extent of the injuries and damages claimed." *Cardenas v. Jerath,* 180 P.3d 415, 424 (Colo. 2008).

It is important to note that the "in consultation with" statutory provisions constitute an **exception** to the privilege, and therefore such material is simply not privileged.[2] The *Samms* case, on the other hand, speaks to a **waiver** of the privilege with respect to certain kinds of

---

[2] The health care providers at The Medical Center of Aurora, Peak Orthopedics and Spine, PLLC, and Sky Ridge Medical Center, the subject of the court's January 25, 2013 Order were all, in this court's view, subject to the exception provisions of the statute and therefore not subject to any physician/patient privilege.

information which, but for the plaintiff's waiver, would otherwise be privileged.  Even though

exception and waiver can occur simultaneously, they also may operate wholly independently.

*See Reutter v. Weber*, 179 P.3d 977, 979 (Colo. 2007).  When an individual waives her

physician/patient privilege by interjecting a medical condition into litigation, she does so as to a

certain category of information, rather than as to a category of provider.  As noted by the

Colorado Supreme Court, "the privilege is still retained with respect to communications

unrelated to the claim or defense," *Alcon v. Spicer*, 113 P.3d 735, 739 (Colo. 2005),

notwithstanding that the medical provides remains the same.  *See also* ; *Hartmann v. Nordin*, 147

P.3d 43, 50 (Colo. 2006).

      In the seminal 1995case involving waiver of the physician/patient privilege and a request

by the defendants to conduct *ex parte* interviews with treating medical providers, the Colorado

Supreme Court stated

> our rules of discovery permit a defense attorney to conduct informal interviews in
> the absence of a plaintiff or the plaintiff's attorney with physicians who have
> treated the plaintiff. . . . However, we also conclude that such informal
> questioning must be confined to matters that are not subject to a physician-patient
> privilege and that the plaintiff must be given reasonable notice of any proposed
> informal interview. Such notice will afford a plaintiff or the plaintiff's attorney an
> opportunity to attend any scheduled interview. Such notice will also enable a
> plaintiff to take other appropriate steps to ensure that interviews are limited to
> matters not subject to the plaintiff's physician-patient privilege, such as to inform
> the physician of the plaintiff's belief that certain information known to the

physician remains subject to the physician-patient privilege or to seek appropriate protective orders from the trial court.

*Samms*, 908 P.2d at 525 -526 (internal citations omitted).  Twelve years later the

Supreme Court refined this holding, stating

*Samms* did not create a blanket rule that a plaintiff is always entitled to attend an interview of a non-party medical provider. Instead, it held that the trial court should take appropriate measures to protect against the divulgement of residually privileged information, and that allowing the plaintiff to attend the interview is the preferred measure where there is a high risk that residually privileged information will be divulged.

*Reutter v. Weber*, 179 P.3d 977, 983 (Colo. 2007).

*Reutter*, however, concerned medical witnesses who fell under the exception provision of

the privilege statute as consulting providers who were involved in a unified course of treatment.

The *Reutter* court found that the risk that 'residually privileged information' – defined as

"medical information not relevant to [the] malpractice action" – will be divulged was very low;

in fact, the *Reutter* court found that the medical providers in that case did not possess residually

privileged information at all and therefore permitted the *ex parte* interviews.  *Id.* at 979.

This case, as noted, involves medical witnesses as to whom waiver, exception, and in

some cases, both waiver and exception applies.  It is not clear from the briefing whether or not

the non-consulting medical professionals specifically noted herein possess residually privileged

information, other than in Plaintiff's self-provided medical history.  Most of the entities,

however, are health-related military facilities, and it is therefore conceivable that residually

privileged information about a service member or service members family may be possessed.

Although *Samms* has been refined by *Reutter*, what remains a constant is *Samms*' directive that

5

the court should take appropriate measures to protect against the divulgement of residually privileged information, and that allowing the plaintiff to attend the interview is the preferred measure where there is a high risk that residually privileged information will be divulged.

Therefore, as to Naval Medical Center Portsmouth: (Adult Reconstruction/Total Joint Replacement, Pain Management), Langley Physical Therapy, Langley AFB Hospital, including Dr. James Tinsley and Dr. Powell, Langley AFB Aquatic Therapy, Langley AFB Mental Health, University of Colorado Hospital Anschutz Medical Pavillion, and Buckley ADB (sic) Hospital – Mental Health Clinic and PCM, the court finds that informal questioning of the medical witnesses by Defendants must be confined to matters that are not subject to a physician-patient privilege and the plaintiff-patient should be provided prior notice of any scheduled informal interviews by the defendants and an opportunity to attend the interview.  If the plaintiff-patient and/or her attorney choose not to avail themselves of the opportunity to attend the interview as scheduled, Defendants may proceed with the interview in their absence.  Underlying all discovery is the admonition succinctly stated in *Samms:*

> [A]lthough by filing a civil action alleging injuries a plaintiff impliedly waives his or her physician-patient privilege with respect to matters pertaining to those injuries, a treating physician may decline to participate in *ex parte* discussions with defense counsel. . . . [I]t must be presumed that both attorneys and physicians will conduct themselves ethically.  A treating physician has a primary obligation to tell the truth, regardless of whether his or her testimony will help or hinder the patient's case.  Attorneys may not seek information not relevant to the physical or mental condition at issue in the litigation, and non-party treating physicians have no incentive to make irrelevant disclosures.

*Id.* at 528.

6

It is **ORDERED**

"Defendants Richard M. Lotspeich, PA-C's and Peak Orthopedics and Spine, PLLC's Supplement to its Motion to Conduct *Ex Parte* Meetings with Certain Health Care Providers" [Doc. No. 32] is **GRANTED in part** and **DENIED in part**.  The defendants may conduct informal interviews with the listed medical providers outside the presence of the plaintiffs and their attorneys, provided the defendants provide reasonable notice to the plaintiffs and their counsel as to each scheduled interview and an opportunity to attend each interview.

Dated this 29th day of January, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

7